NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Diana L. DAVIS, | |
| Plaintiff, | Civil No. 09-0925 (AET) |
| v. | **OPINION** |
| James CLEARY, individually and as Superintendent of Schools of the Monmouth Regional School District, and THE MONMOUTH REGIONAL SCHOOL DISTRICT, a New Jersey Municipal Corporation, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter has come before the Court upon Defendants James Cleary and the Monmouth Regional School District's Motion for Summary Judgment [docket # 18]. Plaintiff Diana L. Davis has opposed the motion [22]. The Court has decided the motions upon the parties' submissions and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, the Defendants' motion is granted.

## II. BACKGROUND

This case involves the Defendants' refusal to grant Plaintiff a salary increase allegedly on the basis of her race, gender, and age, as well as the Defendants' removal of one of Plaintiff's supervisory roles allegedly in retaliation for her complaints of discrimination.

### A. Plaintiff's Employment

Plaintiff Diana L. Davis, a 58-year-old African-American female, was hired in July 2002

as Supervisor of Social Studies and Supervisor of the Media Center at Monmouth Regional High School ("MRHS").  (Counterstatement of Material Facts ("CMF") ¶ 9) [22-3].  Plaintiff initially taught two classes in the form of a double-period of Humanities and Advanced Placement Literature.  (*Id.* at 23:8–20.)  Her starting salary was $85,000.00, with an annual contractual increase of between $4,500 and $5,000.[1]  (Mot. for Summ. J. Ex. F, Davis Dep. 53:9–10) [18-8].

### B.  Salary Increase Request

In May 2006, Plaintiff expressed to Defendant Cleary her interest in dropping her teaching responsibilities and assuming the role of supervisor of the World Language Department for a salary increase.  (*Id.* at 57:13–58:2.)  Cleary agreed to have her supervise the World Language Department and to drop the classes, but stated that he would address her salary increase request at a later date.  (Pl.'s Resp. to Mot. for Summ. J. ¶ 4.)  In December 2006, Plaintiff met with Cleary and Principal Andrew Teeple to discuss her salary; although Teeple supported Plaintiff's request for a pay increase, Cleary stated that such an increase would need to await budget approval. (Davis Dep. 77:8–78:9.)  Plaintiff again discussed with Cleary at a June 2007 meeting a potential salary increase as well as compensation for teaching an independent study course and for covering for the English Department Supervisor who was on maternity leave.  (*Id.* at 107:5–108:25.)  At the meeting, Cleary apparently became irritated with Plaintiff for requesting a salary increase and told Plaintiff that she "should not get greedy."  Pl.'s Resp. ¶ 9.)  Plaintiff told Cleary that she "felt discriminated against," in response to which Cleary apparently said that Plaintiff's "experience did not matter and that he could hire younger supervisors at less pay."  (*Id.*)  Cleary nonetheless stated that he would take Plaintiff's requests to the board of education.  (*Id.*)  Upon the board's approval, Plaintiff ultimately received a $4,700 stipend for the additional work she had performed in temporarily supervising the English department and teaching independent study.  (*Id.* at ¶ 11);

---

[1] As of the 2008-2009 school year, Plaintiff's salary was $120,670.  (CMF ¶ 29.)

(Davis. Dep. 111:18–22).  However, the board denied Plaintiff's request for a salary increase.
(CMF ¶ 21.)

### C.  Removal From Supervisor of Media Center Position

In September 2007, Defendant Cleary informed Plaintiff that Assistant Principal Kathleen
Mihalko would be replacing her as Supervisor of the Media Center.  (Mot. for Summ. J. Ex. G,
Letter from Diana Davis, MRHS, to Anthony Schaible, President of the Board of Education, at 4–
5) [18-9].  At a meeting convened to discuss this decision, Cleary stated that he was dissatisfied
with Plaintiff's inability to control her subordinates and her failure to suggest cost-effective
staffing options.  (Pl.'s Resp. ¶ 17–19.)  Plaintiff, however, believes this decision was retaliatory
or otherwise based on age discrimination.  According to Plaintiff, Mihalko is "considerably
younger" than she is, (CMF ¶ 23) [22-3], although Plaintiff has not stated Mihalko's precise age.
Despite Plaintiff's relinquishment of the Media Supervisor role, Plaintiff's salary was not
reduced.  (Davis Dep. 162:12–22.)

### D.  The Present Action

Plaintiff initially sought assistance from her union association to file a grievance with
regard to her salary increase request and the removal of job duties.  (Davis Dep. 174:20-25.)
After the union stated that she did not have an appropriate grievance under her contract, Plaintiff
opted not to pursue a grievance.  (*Id.* at 175:5–11.)  In November 2008, Plaintiff filed a
discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  (Pl.'s
Resp. to Mot. for Summ. J. ¶ 22) [22].  The EEOC issued a determination stating that it was
unable to conclude that there was any violation of employment discrimination law.  (Br. in Supp.
Ex. D, EEOC Dismissal & Notice of Rights).  Plaintiff then filed the Complaint [1] on March 2,
2009, claiming race and gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §
2000(e), age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621, *et seq.*, race and age discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.*, violations of her Due Process and Equal Protection rights under 42 U.S.C. § 1983 and under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, and retaliation under Title VII, 42 U.S.C. 2000(e)(3), and under NJLAD.

Defendants filed the present Motion for Summary Judgment on February 23, 2011 [18]. Pursuant to this Court's extension order, Plaintiff filed her opposition on April 1, 2011 [22]. Defendants subsequently filed their reply on April 13, 2011 [25].

## III. ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).  Specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248–49.

Where the nonmovant will bear the burden of proof at trial, the movant's burden can be "discharged by 'showing' . . . that there is an absence of evidence to support the [nonmovant's]

case." *Celotex,* 477 U.S. at 325. If this is shown, the burden shifts to the nonmovant to point to sufficient cognizable evidence to create material issues of fact "such that a reasonable jury could find in its favor." *McCabe v. Ernst & Young, LLP,* 494 F.3d 418, 424 (3d Cir. 2007) (*citing* Fed. R. Civ. P. 56(e)); *see Celotex,* 477 U.S. at 332. "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact." *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 161 (3d Cir. 2009) (*citing Blair v. Scott Specialty Gases,* 283 F.3d 595, 608 (3d Cir. 2002)).

### B. Title VII Discrimination Claims (Counts I and II)

Title VII states that it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII plaintiffs may proceed under either "the pretext theory set forth in *McDonnell Douglas Corp. v. Green,* [411 U.S. 792 (1973)], or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins,* [490 U.S. 228 (1989)]." *Makky v. Chertoff,* 541 F.3d 205, 213 (3d Cir. 2008). We consider Plaintiff's claims under both frameworks.[2]

Under the burden-shifting framework set forth in *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of unlawful discrimination. *Vernon v. A & L Motors,* 381 F. App'x 164, 166–67 (3d Cir. 2010).

---

[2]   The Third Circuit has noted that "[t]he 'mixed motive' standard is normally used in instructing juries." *Rouse v. II-VI Inc.,* No. 08-3922, 2009 WL 1337144, at *4 (3d Cir. May 14, 2009) (citing *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 96–97 (2003)). Nonetheless, the Third Circuit has required district courts to apply a mixed-motive analysis to Title VII discrimination claims even on summary judgment. *See Perez v. NJ Transit Corp.,* 341 F. App'x 757, 760–61 (3d Cir. 2009).

Once the plaintiff has satisfied its initial burden by a preponderance of the evidence, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), the burden of production shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the adverse employment action." *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden of production shifts back to the plaintiff to establish that the employer's proffered reasons were merely a pretext for intentional discrimination. *Makky*, 541 F.3d at 214 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 507–08). The ultimate burden of persuading the trier of fact that the defendant discriminated remains at all times with the plaintiff. *Shaner v. Synthes*, 204 F.3d 494, 500–01 (3d Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The standards of proof for mixed-motive cases are provided in the Civil Rights Act of 1991. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003) (noting that the 1991 Act responded to *Price Waterhouse* by "setting forth standards applicable in 'mixed motive' cases"). Under the Act, a plaintiff can satisfy its initial burden by presenting "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice . . . .'" *Id.* (citing 42 U.S.C. § 2000e-2(m)). Such evidence can be direct or circumstantial. *Id.* If the plaintiff establishes an unlawful employment practice, an employer can then argue—as a limited affirmative defense to limit the plaintiff's remedies—that it "would have taken the same action in the absence of the impermissible motivating factor." *Id.* at 94–95 (quoting 42 U.S.C. § 2000e-5(g)(2)(B)).

Here, it is undisputed that Plaintiff, as an African-American woman, is a member of a protected class with regard to both her race and gender discrimination claims. *See, e.g.*, *Jones v. CVS Pharmacy*, No. 07-3878, 2008 WL 5416394, at *6 (D.N.J. Dec. 22, 2008) (finding that African-American was part of protected class); *Hodgkins v. Kontes Chem. & Life Sci. Prod.*, No. 98-2783, 2000 WL 246422, at *12 (D.N.J. Mar. 6, 2000) (finding that woman was member of

protected class).  Defendants concede that Plaintiff was qualified for the position of Supervisor of World Languages, (*see* Reply Br. 9), and the fact that Plaintiff served as Supervisor of the Media Center for over five years until her replacement by Mihalko shows she was qualified for that position as well.  The crux of the present dispute is whether there was an adverse employment action and whether the circumstances give rise to an inference of unlawful discrimination.

## 1. Race Discrimination

Plaintiff fails to establish a prima facie case of race discrimination because the circumstances do not support an inference of racially discriminatory intent.  Although Plaintiff's opposition brief does not discuss racial animus, Plaintiff's counterstatement of material facts and her certification point to three purported indicia of discrimination: (1) the fact that the Plaintiff is "the only African-American administrator" at the school, (CMF ¶ 9); (2) the school's failure to mention Black History Month on the 2005 school calendar, (Pl.'s Resp. to Mot. for Summ. J. ¶ 3); (Davis Dep. 27:22–25), and the apparent substitution of Black History Month by Diversity Day, (CMF ¶ 11); and (3) then-Superintendent Patrick Collum's joke during an October 2005 meeting regarding this calendar issue that the school should add a "Bring Your Horse to School Day" event to the calendar as well.  (Davis Dep. 36:1–7.)  None of these facts supports an inference of racial discrimination.

First, Defendants have refuted the factual assertion that Plaintiff is the only African-American administrator by way of a certification averring that another African-American, Charles R. Ford, Jr., was hired as superintendent at Monmouth Regional High School in May 2009.  (*See* Maria Parry Certification ¶ 3a.)  Moreover, the lack of a significant number of Black administrators at the school does not in and of itself support an inference of racial animus, especially given the absence of additional statistics regarding the qualified applicant pool.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 542–43 (3d Cir. 1992) (finding that no

conclusion may be drawn from raw numbers without analysis of "qualified applicant pool or flow of qualified candidates over relevant time period"); *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 487 (1986) (stating that "neither the Constitution nor Title VII requires a particular racial balance in the workplace").  Second, Plaintiff acknowledges that Black History Month ultimately was celebrated and that she was able to organize a related panel discussion with Superintendent Collum's support.  (*See* Davis Dep. 42:12–45:5.)  Third, we cannot say that the school calendar omission and Collum's offhand remark support an inference of racial discrimination, particularly considering the incidents in question occurred more than a year before the alleged discrimination and did not involve Defendant Cleary or the board of education—the relevant decisionmakers here.  *See Ade v. KidsPeace Corp.*, 401 F. App'x 697, 704 (3d Cir. 2010); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

Because Plaintiff has not shown circumstances giving rise to an inference of racial discrimination, she has failed to establish a prima facie case under *McDonnell Douglas*.  Absent any inference of racial discrimination, we also find that Plaintiff has failed to show race was a "motivating factor" under *Price Waterhouse* and 42 U.S.C. § 2000e-2(m).  Therefore, we will grant summary judgment in favor of Defendants on Plaintiff's Title VII race discrimination claim in Count I.

### 2.  Gender Discrimination

Plaintiff argues that Defendants engaged in an adverse employment action by denying her request for a raise when she took on the role of Supervisor of the World Languages Department.  (Pl.'s Br. in Opp'n 2–3.)  Plaintiff argues that this action was discriminatory because, by contrast, other male employees did receive salary increases for their supervisory roles.  (*Id.* at 2–3, 7.)

A denial of a pay raise despite raises given to other coworkers may constitute an adverse employment decision.  *Hill v. Emory Univ.*, 346 F. App'x 390, 395 (11th Cir. 2009) (citation and quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001); *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000).  However, to state a prima facie wage discrimination claim, the "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  *Hill*, 346 F. App'x at 395; *see also Enders/Maden v. Super Fresh*, 594 F. Supp. 2d 507, 514–15 (D. Del. 2009) (denying disparate pay claim because no male employees performed sufficiently similar work).

Here, Plaintiff's gender discrimination claim fails because she has not shown that males who received salary increases were situated similarly to her.  Plaintiff suggests two purported comparators: (1) Anthony De Orio, whose salary changed from $95,000 to $104,000 when he took on the role of Athletic Director in addition to his Physical Education Supervisor position, (CMF ¶ 29); and (2) Ted Wardell, whose salary changed from $70,542 to $88,636 when he took on the role of Math Supervisor in addition to his Science Supervisor position,[3] (*id.* ¶ 29).  However, Defendants point out that De Orio was appointed to a new, jointly-titled Athletic Director / Physical Education Supervisor position after departments were consolidated, and that Wardell's salary increase was based on his teaching a class and not his supervisory role.  (Resp. to Pl.'s CMF ¶ 13) [25].  Defendants further explain that the reason the board did not increase Plaintiff's salary was because, unlike the male employees, her assumption of the Media

---

[3]   Plaintiff cites as an additional comparator Scott Larkin, who received a $2,500 stipend for assuming Activities Director responsibilities in addition to his role as Assistant Principal.  (Br. in Opp'n 3).  However, this fact carries little weight given that Larkin received a stipend instead of a salary increase, just like Plaintiff did.  Furthermore, Defendants have pointed out that Larkin's stipend was a negotiated item pursuant to the reopening of the union's contract with the board whereas Plaintiff's union never reopened the contract regarding her supervisory roles.  (*See* Resp. to Pl.'s CMF ¶ 13.)

Supervisor role was cancelled out by her dropping the classes she was teaching.[4]  (Br. in Supp. 27.)  Given these significant differences between Plaintiff and the males who received pay increases, we conclude that Plaintiff has failed to show sufficiently similar comparators. Therefore, she cannot establish either an adverse employment action or that any disparity creates an inference of gender discrimination.

Because Plaintiff cannot support either a prima facie case under *McDonnell Douglas* or a mixed-motive theory under *Price Waterhouse* and 42 U.S.C. § 2000e-2(m), we will grant summary judgment in favor of Defendants on the Title VII gender discrimination claim in Count II.

### C.  NJLAD Race Discrimination Claim (Count IV)

New Jersey's Law Against Discrimination ("NJLAD") states that it is an unlawful employment practice "[f]or an employer, because of the race, creed, color, national origin, ancestry, age . . . or the nationality of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . ."  N.J. S.A. 10:5-12(a) (West 2008).  New Jersey courts analyzing NJLAD claims have "generally followed the approach utilized by the federal courts in civil rights cases involving Title VII complaints."  *Myers v. AT&T*, 882 A.2d 961, 966 (N.J. Super. Ct. App. Div. 2005) (citing *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906–07 (N.J. 1990).

Plaintiff's NJLAD race discrimination claim fails for the same reason as her Title VII race discrimination claim: failure to establish a prima facie case.  As stated above, the low percentage of non-Caucasian administrators, the omission of Black History Month from the school calendar,

---

[4]    Plaintiff's certification states in response that two female supervisors, Jessie Blair and Victoria Romana, were relieved from their teaching responsibilities without being required to take on administrative responsibilities like she did, (Pl.'s Resp. ¶ 7).  Although this fact might be relevant to show that Defendants' "cancel-out" theory is pretextual at the third step of *McDonnell Douglas*, it is immaterial to our analysis of Plaintiff's suggested comparators at step one.  In order to support a gender discrimination claim, Plaintiff would need to show that one of the *male* comparators dropped their teaching responsibilities but nonetheless received a pay increase.

and the joke made by then-Superintendent Collum do not support an inference of race-based discrimination.  Thus, we will grant summary judgment in favor of Defendants on Plaintiff's NJLAD race discrimination claim in Count IV.[5]

### D.  Title VII Retaliation Claim (Count IX)

Title VII's retaliation provision prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, an employee must show "(1) that he or she engaged in protected activity, (2) that he or she was subjected to an adverse action by the employer, and (3) the existence of a causal link between the employee's protected activity and the purportedly adverse action."  *Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 815 (3d Cir. 2010) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

The standard for finding an adverse action is different for retaliation claims as opposed to substantive discrimination claims.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63–67 (2006).  An employee claiming an adverse action "must show that a reasonable employee would have found the challenged action materially adverse" in that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68.  In this respect, "[t]he scope of the anti-retaliation provisions extends beyond workplace-related or employment-related retaliatory acts and harm[.]"  *Id.* at 67.

### 1.  Prima Facie Case

Plaintiff argues that she engaged in protected activity by opposing an unlawful employment practice insofar as she told Defendant Cleary at a June 2007 meeting that she "felt

---

[5]   The NJLAD race discrimination claim stated in Count V is identical to Count IV and is therefore *sua sponte* dismissed as duplicative.

discriminated against" based on his denial of her request for a salary increase.  (Pl.'s Resp. ¶ 9);

*see* (Br. in Opp'n 7).  As far as we can discern from Plaintiff's own account of the conversation,

Plaintiff did not specify what type of discrimination she meant.  Typically, vague complaints of

"discrimination" are insufficient absent any indication that the discrimination is based on one of

Title VII's protected classes.  *See Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011)

(stating that complaints must be about discrimination on basis of race, color, religion, sex, or

national origin and that "[g]eneral complaints of unfair treatment will not suffice"); *Tomanovich*

*v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms

of discrimination or harassment, without indicating connection to a protected class or providing

facts sufficient to create that inference, is insufficient.").  Because Plaintiff did not suggest any

*unlawful* discrimination, Defendants could not have been on notice that Plaintiff was "opposing

an unlawful employment practice."

Moreover, even assuming Plaintiff's statement constituted a protected activity, Plaintiff's

claim fails at the second prong.  Plaintiff asserts that the adverse employment action was the

removal of her responsibilities as Media Supervisor.  (Br. in Opp'n 7); (Compl. ¶ 32).  The

significance of any act of retaliation "will often depend upon the particular circumstances."

*White*, 548 U.S. 53, 69 (2006).  Several courts have found that the removal of job duties,

particularly without reduction in pay, is not an adverse employment action for the purposes of a

retaliation claim.  *See, e.g.*, *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 879

(5th Cir. 2010); *Belt v. Ala. Historical Comm'n*, 181 F. App'x 763, 764–65 (11th Cir. 2006);

*Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 504 (W.D. Pa. 1988).  We concur with those

courts in finding that, under the circumstances before us, the removal of Plaintiff's responsibilities

as Media Supervisor did not constitute a retaliatory adverse employment action.  As a result of

Defendants' action, Plaintiff had less work to do but received the same pay, and we fail to see how this would dissuade a reasonable employee from complaining of discrimination.

Because Plaintiff's claim fails to satisfy the first and second prongs, she cannot state a prima facie case and we need not consider the third prong regarding the causal connection.

## 2.  Legitimate, Non-Discriminatory Reason

In an excess of caution, we also note that Defendants have put forth a legitimate, non-discriminatory reason for Plaintiff's replacement by Mihalko: Superintendent Cleary's dissatisfaction with her performance.  According to Defendants, Plaintiff was relieved of her duty as Media Supervisor because of her inability to control her subordinates and her fiscally irresponsible proposals for staffing the center.  (Br. in Supp. 25–26.)  Specifically, one of Plaintiff's subordinates, Media Specialist Kathy Eppinger, ignored hiring committee instructions not to contact a newly-hired Media Center Assistant candidate until after board approval.  (*Id.*) And another subordinate, Erin Gates, attended a Board of Education meeting to protest the manner in which that candidate's interviews were held.  (CMF ¶ 24.)  Furthermore, Plaintiff suggested additional expenditures to staff the Media Center even though there was an alternative that would have cost the school district no additional money.  (*Id*); (*see also* CMF ¶¶ 21–22).

Thus, even if Plaintiff had stated a prima facie retaliation claim, there was a legitimate, non-discriminatory basis for the Defendants' removal of Plaintiff's duties as Media Supervisor.

## 3.  Pretext

Plaintiff's pretext argument fails to adequately rebut Defendant's legitimate, non-discriminatory reason.  Specifically, Plaintiff's certification states that the staffing alternative that Defendant Cleary chose actually "involved monetary compensation of overtime to a permanent substitute for providing coverage to the library, while also paying Mrs. Little to do a job for which she was not qualified; it was the most fiscally irresponsible choice of all."  (Pl.'s Resp. ¶ 24.)

However, this statement is merely a critique of the wisdom of Cleary's choice and it fails to show that his stated disappointment with her proposals was pretextual.  *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (stating that in order "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken").

Accordingly, because Plaintiff has failed to state a prima facie case, and because alternatively Defendants' legitimate basis is not pretextual, we will grant summary judgment in favor of Defendants on the Title VII retaliation claim.

### E.  NJLAD Retaliation Claims (Count X)

The anti-retaliation of provision of the NJLAD makes it unlawful

> [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12(d).  NJLAD retaliation claims follow the *McDonnell Douglas* burden-shifting framework.  *Victor v. State*, 4 A.3d 126, 140–41 (N.J. 2010).  To establish a prima facie case of NJLAD retaliation, a plaintiff must show that: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." *Victor*, 203 4 A.3d at 141 (citing *Woods-Pirozzi v. Nabisco Foods,* 675 A.2d 684, 695 (N.J. Super. Ct. App. Div. 1996)).  The *Burlington* standard applies to NJLAD claims, so a NJLAD plaintiff may show an adverse employment consequence by establishing that "a reasonable employee would have found the challenged action materially adverse."  *Roa v. Roa*, 985 A.2d 1225, 1235–37 (N.J. 2010).

-14-

Here, having concluded that Plaintiff's Title VII retaliation claim fails, we must grant summary judgment in favor of Defendants on the NJLAD retaliation claim in Count X for the same reasons.

### F.   ADEA Discrimination (Count III)

The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added).  The Supreme Court has stated that ADEA plaintiffs may not proceed under a *Price Waterhouse* mixed-motive theory, *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ---, 129 S. Ct. 2343, 2349–51 (2009), so only the *McDonnell Douglas* burden-shifting framework applies to ADEA claims.  *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (finding that *McDonnell Douglas* applies to ADEA claims).  In order to demonstrate a prima facie case of age discrimination necessary to satisfy the initial burden of production, a plaintiff must show that (1) the plaintiff is forty years of age or older, (2) the defendant took an adverse employment action against the plaintiff, (3) the plaintiff was qualified for the position, (4) the plaintiff was replaced by an employee sufficiently younger to support a reasonable inference of age discrimination.  *Smith*, 589 F.3d at 689–90 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).  An "adverse employment action" must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 260 (3d Cir. 2006) (citations and quotation marks omitted.)  And in order to satisfy the fourth element, the replacement employee should be "substantially younger," *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  The burden of persuasion rests at all times with the plaintiff to prove that age was the "but-for" cause of defendant's adverse employment action.  *Smith*, 589

F.3d 684, 691 (3d Cir. 2009); *Kelly v. Moser, Patterson & Sheridan, LLP*, 348 F. App'x 746, 749–50 (3d Cir. 2009).

### 1. Prima Facie Case

Defendants concede that, because Plaintiff was fifty-six years old at the time of the alleged employment practices, she satisfies the first element. (Reply Br. 9.) And Plaintiff was evidently qualified for the Media Supervisor position considering she served in that role for five years, despite the fact that Cleary ultimately removed her from this position based on what he considered unsatisfactory performance.

As to whether Plaintiff's replacement constituted an adverse employment action, we find that the removal of Plaintiff's responsibilities as Media Supervisor was not a significant enough change to constitute an adverse employment action. Plaintiff received the same compensation even after her replacement by Mihalko. And Plaintiff continued to supervise Social Studies and World Languages. Although Plaintiff's brief does not state any theory upon which we could treat her removal from the Media Supervisor role as an adverse employment decision, Plaintiff did state in her deposition that losing the Media Supervisor position "diminished the possibility of any salary increase that I was asking for, because one of the positions that I was requesting extra pay for was taken away." (Davis Dep. 163:1–5.) We acknowledge that "the denial of a raise can constitute a materially adverse employment action if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms." *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). However, Plaintiff lacked any expectancy in a salary increase because, by the time Plaintiff was replaced by Mihalko, the board had already denied her request for such an increase.

Moreover, Plaintiff's age discrimination claim fails because she has not shown that Kathleen Mihalko, the employee who replaced her, was sufficiently younger. *Reynolds v. Dep't*

*of Army*, Civ. No. 08-2944, 2010 WL 2674045, at *14–15 (D.N.J. June 30, 2010).  Although information as to Mihalko's age likely would have been discoverable, Plaintiff has put forth no evidence as to this crucial fact beyond the conclusory, self-serving statement in her certification that "Mrs. Mihalko at the time was considerably younger."  (Pl.'s Resp. ¶ 16.)  Absent any further evidence, Plaintiff has failed to satisfy the fourth element.

Thus, Plaintiff has not adequately stated a prima facie case of age discrimination.

### 2.   Legitimate, Non-Discriminatory Reason

Even if Plaintiff had stated a prima facie case, Defendants have put forth as a legitimate reason for Plaintiff's replacement her unsatisfactory performance.  As described above, Defendants assert that Plaintiff was relieved of her duty as Media Supervisor because of her inability to control her subordinates Ms. Eppinger and Ms. Gates, and for her failure to suggest a cost-effective method of staffing the Media Center.  (Br. in Supp. 25–26.)

### 3.   Pretext

In light of Defendants' proffered legitimate, non-discriminatory reason, Plaintiff must show pretext.  As noted above, Plaintiff's critique of Cleary's preferred method of staffing the Media Center does not show that his dissatisfaction with her staffing proposals was pretextual. Plaintiff additionally submits several statements made by Cleary as evidence that the stated reasons for her replacement were pretext for age discrimination.  In cases where employees offer discriminatory comments in order to show pretext, it is important to consider the relationship between the speaker and the employee, the timing of the comment, and the purpose and content of the statement.  *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997); *Frantz v. Ferguson Enters., Inc.*, No. 07-4083, 2009 WL 222419 at *6 (E.D. Pa. Jan. 28, 2009). We find that, when taken in context, none of the comments offered by Plaintiff adequately rebuts Defendants' proffered reason.

According to Plaintiff's certification, Cleary responded to Plaintiff's initial request for a pay increase during a June 2007 meeting by saying that her "experience did not matter and that he could hire younger supervisors at less pay." (Pl.'s Resp. ¶ 9.)  Cleary apparently stated at a subsequent meeting regarding the board's denial of Plaintiff's salary increase that "he could take away some of [Plaintiff's] duties and give them to some of the new young people who would be happy to have a supervisor's job." (Pl.'s Resp. ¶ 12.)  However, Principal Andrew Teeple, who was present during the latter meeting, did not refute that Cleary made the statement, but characterized it as "more along the lines of newer people right out of college with less experience[,]" given that "that we [the district] could spend less money on people with less experience." (Teeple Dep. 97:14–16.)  And Cleary stated in his deposition that he chose Mihalko because she "is a competent female administrator in the building that was more than willing to pick up a responsibility like that within her work responsibilities without it being a burden on her or a requirement for us to have to add any type of additional stipend." (Cleary Dep. 111:21–112:1.)  Thus, while Cleary's statements may be facially troubling, the deposition testimony of Cleary and Teeple illuminate that Cleary's comment about hiring younger employees was driven by financial motivations and not by anything intrinsic to Plaintiff's age.  Moreover, these comments were made a few months before Cleary's decision to replace Plaintiff with Mihalko, and arose in the unrelated context of Plaintiff's request for a raise.

Plaintiff also asserts that, at the September 2007 meeting regarding the decision to replace Plaintiff, Cleary stated that "he was punishing [Plaintiff] for not being able to control Kathy Eppinger as the Media Specialist[,]" (Davis Dep. 154).  However, far from establishing pretext, Cleary's comment that his decision was "punitive" underscores that his decision was driven by Plaintiff's performance as a supervisor and not her age.

Thus, none of the comments asserted by Plaintiff show that Plaintiff's age was a but-for cause of her replacement by Mihalko.  Because Plaintiff has failed to establish a prima facie case, and because Defendants' legitimate reasons are not pretext for age discrimination, we will grant summary judgment in favor of Defendants on the ADEA claim.

### G.  NJLAD Age Discrimination Claim (Count VI)

NJLAD age discrimination claims are governed by the same standards and burdens of proof as ADEA claims.  *Kelly v. Moser, Patterson & Sheridan, LLP*, 348 F. App'x 746, 747 n.2 (3d Cir. 2009).  Accordingly, for the same reasons stated with respect to Plaintiff's ADEA claim, we will grant summary judgment in favor of Defendants on the NJLAD age discrimination claim.

### H.  Due Process and Equal Protection Claims Under 42 U.S.C. § 1983 (Count VII) and New Jersey Civil Rights Act Claim (Count VIII)

Counts VII and VIII of Plaintiff's Complaint merely refer to "[t]he actions of Defendants as aforesaid" and neither Count specifies how Defendants' denial of the salary increase or removal of the Media Supervisor duties constitutes a violation of Plaintiff's due process or equal protection rights under 42 U.S.C. § 1983 or the NJCRA.  Plaintiff has failed to respond to Defendants' arguments in support of summary judgment on these claims and therefore fails to show a genuine issue of material fact remains.

As to the due process claims, Plaintiff has provided no basis on which we could find that she had a liberty or property interest in—or, in the employment context, a "legitimate entitlement" to—a salary increase or in holding the position of Media Supervisor in addition to her other responsibilities.  *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  And Plaintiff has not shown that other individuals were similarly situated to her, as is required to support her equal protection claims. *Renchenski v. Williams,* 622 F.3d 315, 337 (3d Cir. 2010) ("To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who

are similarly situated."); *see also Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 816 (3d Cir. 2010) ("The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII[.]").  Finally, regarding Plaintiff's NJCRA claim, Plaintiff has failed to show that she was deprived of any federal or state constitutional right, or that any of her rights were interfered with by threats, intimidation, coercion or force.  *See Felicioni v. Admin. Office of Cts.*, 961 A.2d 1207, 1218 (N.J. Super. Ct. App. Div. 2008) (discussing N.J.S.A. § 10:6-2(c)).

Given the lack of opposition and in light of the factual record, the Court grants summary judgment in favor of Defendants on the § 1983 claims in Count VII and the NJCRA claim in Count VIII.

## IV. CONCLUSION

We recognize that employment discrimination laws such as Title VII were enacted with a "broad remedial purpose[]." *Kromnick v. Sch. Dist. of Phila.*, 739 F.2d 894, 909 (3d Cir. 1984) (citing *United Steelworkers v. Weber*, 443 U.S. 193 (1979)).  Nonetheless, all of Plaintiff's claims suffer from fatal flaws.  The record is devoid of any indicia of racial animus by the relevant decisionmakers.  No male employees are sufficiently similar comparators to support a gender discrimination claim.  A removal of job duties without a reduction in pay is not an adverse employment action for the purposes of retaliation or discrimination.  Plaintiff has failed to show that the employee who replaced her is sufficiently younger than she is, and even if that were not dispositive, the remarks cited by Plaintiff fail to show that Defendants' legitimate reasons were merely pretext for age discrimination.  Finally, Plaintiff appears to concede Defendants' arguments in favor of summary judgment as to her due process and equal protection claims under § 1983 and the NJCRA.  Thus, we consider summary disposition to be the appropriate result in this case.  An appropriate order will follow.


　　*/s/ Anne E. Thompson*　　
ANNE E. THOMPSON, U.S.D.J.

Dated_____September 21, 2011_____